UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

EVERTON DAWKINS,

               Plaintiff,

      v.

FEDERAL BUREAU OF
INVESTIGATION, *et al.*,

               Defendants.

23-CV-849 (NRM) (PK)

**MEMORANDUM DECISION
AND ORDER**

**NINA R. MORRISON,** United States District Judge:

    Plaintiff Everton Dawkins ("Plaintiff"), now proceeding *pro se*, commenced the above action against Defendants Federal Bureau of Investigation ("FBI") and Department of Justice ("DOJ" and, collectively, "Defendants"), alleging that the FBI improperly withheld agency records in violation of the Freedom of Information Act. Since the filing of the complaint, Defendants have produced twelve pages of materials they have deemed responsive to Plaintiff's FOIA request and now move for summary judgment. Plaintiff argues that there are more responsive documents than provided and requests *in camera* review. For the reasons discussed below, the Court grants Defendants' motion for summary judgment.

## BACKGROUND

### I. Plaintiff's FOIA Request

    On February 7, 2023, Plaintiff Everton Dawkins — who resides in Queens — filed a complaint challenging the FBI's denial of Plaintiff's request for the release of agency records pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552.

1

*See* Complaint ("Compl.") ¶¶ 1, 3, ECF No. 1.  Plaintiff argued that the exemptions provided by Defendants "do not justify the government withholding information," *id.* ¶ 17, and asked the Court to direct Defendants to disclose the requested records in their entireties. *Id.* at 7.[1]

Plaintiff's former attorney initially made a FOIA request on behalf of Plaintiff to the FBI on August 8, 2022, seeking:

> All records related to any electronic or other surveillance done with respect to the home located at 140-19 Linden Boulevard, Jamaica, NY, 11436 from 2005 onward; or with respect to the owner of the home, Everton Dawkins, or prior tenants that resided in the home, Douglas Dukes and/or Lillian Dixon; or with respect to Michael Epps. . . . [And] any arrest records, arrest warrants, search warrants, or other documentation related to the above premises and/or the above individuals.

Declaration of Michael G. Seidel ("Seidel Decl.") ¶ 6, ECF No. 24; FOIA Request, ECF No. 24-1.  According to Defendants, Plaintiff's counsel "did not attach a privacy waiver signed by Plaintiff authorizing release of his information to his attorney," nor were any "privacy waivers or proof of death for any of the third parties" included in the request.  Seidel Decl. ¶ 7.

On August 11, 2022, the FBI responded that it received the request and advised Plaintiff's attorney that she had requested records on one or more third-party individuals, but that the FBI could neither confirm nor deny the existence of such records pursuant to FOIA exemptions under 5 U.S.C. § 552 (b)(6) and (b)(7).  Compl. ¶ 16; Seidel Decl. ¶ 8.  The letter also informed Plaintiff's attorney that she could file

---

[1] All page references use ECF pagination except where noted.

an administrative appeal with the DOJ Office of Information Policy (OIP) within ninety days of the letter. Seidel Decl. ¶ 8. In October 2022, Plaintiff appealed the decision and attached a privacy waiver signed by Plaintiff. Seidel Decl. ¶¶ 9, 12 n.3. The OIP affirmed the decision on December 15, 2022. *Id.* ¶ 11; Compl. ¶ 26. Plaintiff was then "deemed to have exhausted his administrative remedies," 5 U.S.C. § 552(a)(6)(C)(i), and Plaintiff filed his complaint with this Court. Seidel Decl. ¶ 12.

## II. Procedural History

In a letter dated March 15, 2023, the FBI informed Plaintiff's attorney that after reviewing its appeal documentation, including the signed privacy waiver and Complaint, it had located additional responsive records subject to the FOIA concerning Plaintiff. Seidel Decl. ¶ 13(b). For its initial search, the FBI searched its Central Records System ("CRS"), an extensive system of records maintained by the FBI and spans the entire FBI organization. *Id.* ¶ 27. After searching the CRS, the FBI reviewed fourteen pages it deemed responsive and released twelve pages to Plaintiff in full or in part, with certain information exempted pursuant to FOIA exemptions. *Id.* ¶ 13(b).[2] The pages consisted of correspondence received by the FBI's New York field office in which Plaintiff raised complaints about the alleged surveillance of his home. *Id.* ¶ 35. With respect to Plaintiff's request for records on third party individuals, the FBI included a *Glomar* response, stating that the agency "could neither confirm nor deny the existence of [the] records pursuant to FOIA Exemptions (b)(6) and (b)(7)(C) . . . because the mere acknowledgment of the existence

---

[2] The FBI "withheld two pages in full because they were duplicates of [the] other processed pages." Seidel Decl. ¶ 13(b).

3

of FBI records on third-party individuals could reasonably be expected to constitute an unwarranted invasion of personal privacy." Seidel Decl. ¶¶ 13(a), 17–18.[3]

This Court held a premotion conference on September 13, 2023, and directed the parties to meet and confer as to whether the parties would agree to have the FBI conduct a search of Plaintiff's address and redact relevant information pursuant to the FOIA exemptions and/or agree to an *in camera* production of the withheld files. Order dated Sept. 13, 2023. Following the premotion conference, the FBI conducted a renewed search based on Plaintiff's address and on October 11, 2023, notified him that his "request for a search of his address was conducted and that records containing his address were previously reviewed and released" to him. Seidel Decl. ¶ 15.

On April 11, 2024, Plaintiff's then-counsel filed a letter in which she stated that Plaintiff had refused to communicate with her after informing her that he no longer "wishes to pursue this case." ECF No. 20. On April 23, 2024, Plaintiff's counsel filed a motion to withdraw, which the Court granted on April 29, 2024. Order dated April 29, 2024. The Court later held a conference at which Plaintiff stated that he

---

[3] Under the *Glomar* doctrine, "an agency may, pursuant to FOIA's statutory exemptions, refuse to confirm or deny the existence of certain records in response to a FOIA request . . . ." *Wilner v. Nat'l Sec. Agency*, 592 F.3d 60, 67 (2d Cir. 2009). "To properly employ the *Glomar* response to a FOIA request, an agency must tether its refusal to respond to one of the nine FOIA exemptions — in other words, a government agency may refuse to confirm or deny the existence of certain records if the FOIA exemption would itself preclude the acknowledgment of such documents." *Id.* at 68 (alteration in original) (quotation omitted) (citation omitted).

4

On June 20, 2024, Plaintiff, now proceeding *pro se*, opposed Defendants' motion with an affidavit requesting, *inter alia*, an *in camera* review by the Court. Plaintiff's Affidavit in Opposition (Pl.'s Opp.), ECF No. 28, at 1–2. Plaintiff contends that the FBI and "their local partners" have been surveilling him and his family for "24 hours per day for more than fifteen (15) years" and have taken actions to "engage [his] managers and other employees in efforts to harass and abuse [him] in an attempt to force [him] to resign." *Id.* ¶¶ 6–7, 9. These allegations were not included in the complaint initiating this lawsuit and were raised for the first time in Plaintiff's affidavit opposing summary judgment. Plaintiff argues that *in camera* review will reveal evidence of the FBI's ongoing surveillance and seventeen years of constitutional violations. *Id.* at 7. Defendants filed a reply in further support of their motion for summary judgment, arguing that "Plaintiff's opposition fails to address most, if not all, of FBI's arguments . . . [and] [i]nstead [] raises new, never-before-pled allegations about what he believes FBI and others have done to him and his family." Defendants' Reply in Support of Motion ("Def.'s Reply"), ECF No. 30, at 1–2. Plaintiff then filed a second affidavit in which he restates his request for *in camera* review of the records, and in the alternative, asks the Court to order the FBI's investigation of

---

*F.B.I.*, 181 F.3d 279, 290 (2d Cir. 1999) (citing *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973)). "Once a FOIA request has been made for documents, the preparation of a Vaughn index is now an accepted method for the Government to identify responsive documents and discharge its obligation to assert any claimed FOIA exemptions to the various documents withheld." *N.Y. Times Co. v. U.S. Dep't of Just.*, 758 F.3d 436, 438 (2d Cir. 2014), *supplemented*, 762 F.3d 233 (2d Cir. 2014).

him to end.  Plaintiff's Second Affidavit in Opposition (Pl.'s Sur-Reply), ECF No. 31, at 3.

## LEGAL STANDARD

### I. FOIA

The Freedom of Information Act "was enacted in order to promote honest and open government and to assure the existence of an informed citizenry [in order] to hold the governors accountable to the governed." *LatinoJustice PRLDEF v. U.S. Dep't of Homeland Sec.*, No. 19-CV-3438 (BCM), 2021 WL 1721801, at *3 (S.D.N.Y. Apr. 29, 2021) (quotation omitted) (alteration in original) (quoting *Nat'l Council of La Raza v. Dep't of Justice*, 411 F.3d 350, 355–56 (2d Cir. 2005)).  "However, Congress realized that legitimate governmental and private interests could be harmed by release of certain types of information, and therefore provided [] specific exemptions under which disclosure could be refused." *Platsky v. Fed. Bureau of Investigation*, No. 20 CIV. 573 (JPC), 2021 WL 2784530, at *3 (S.D.N.Y. July 2, 2021), *aff'd*, No. 21-2064, 2022 WL 17751274 (2d Cir. Dec. 19, 2022) (quotation omitted) (quoting *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 152 (1989)).  As such, "FOIA strongly favors a policy of disclosure and requires the government to disclose its records unless its documents fall within one of the specific, enumerated exemptions set forth in the Act, which must be narrowly construed." *LatinoJustice PRLDEF*, 2021 WL 1721801, at *3 (quotation omitted) (alteration adopted) (quoting *Nat'l Council of La Raza*, 411 F.3d at 355–56 (citations omitted)).

FOIA authorizes a complainant from whom agency records may have been improperly withheld to bring suit in "the district court of the United States in the

7

district in which the complainant resides." 5 U.S.C. § 552(a)(4)(B). The district court must then review the matter *de novo*. *Id.*

## II. Resolving FOIA Claims at Summary Judgment

"Summary judgment is the procedural vehicle by which most FOIA actions are resolved." *Seife v. U.S. Dep't of State*, 298 F. Supp. 3d 592, 604 (S.D.N.Y. 2018) (quotation omitted). "[T]he general rule in [the Second] Circuit is that in FOIA actions, agency affidavits alone will support a grant of summary judgment." *Gonzalez v. U.S. Citizenship & Immigr. Servs.*, 475 F. Supp. 3d 334, 341 (S.D.N.Y. 2020); *see also Carney v. U.S. Dep't of Just.*, 19 F.3d 807, 814 (2d Cir. 1994) ("An affidavit from an agency employee responsible for supervising a FOIA search is all that is needed to satisfy Rule 56(e)."). "Summary judgment is warranted on the basis of agency affidavits when the affidavits describe the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." *Wilner*, 592 F.3d at 73 (quotation omitted).

Thus, if an agency describes its justifications for nondisclosure with reasonably specific detail and demonstrates that the information withheld logically falls within the claimed exemption, the requester "must make a showing of bad faith on the part of the agency sufficient to impugn the agency's affidavits or declarations or provide some tangible evidence that an exemption claimed by the agency should not apply or summary judgment is otherwise inappropriate." *Jabar v. United States Dep't of Just.*, 62 F.4th 44, 52 (2d Cir. 2023) (quotation omitted). The defending agency "has

the burden of showing that its search was adequate and that any withheld documents fall within an exemption to the FOIA." *Gonzalez*, 475 F. Supp. 3d at 346 (citing *Carney*, 19 F.3d at 812).

Lastly, "[a] *pro se* party's submissions are to be read liberally, a requirement that is especially strong in the summary judgment context, where a *pro se* plaintiff's claims are subject to a final dismissal." *Platsky*, 2021 WL 2784530, at *3 (quotation marks omitted) (alteration in original); *see also Harris v. Miller*, 818 F.3d 49, 57 (2d Cir. 2016) ("[I]t is well established that a court is ordinarily obligated to afford a special solicitude to pro se litigants, particularly where motions for summary judgment are concerned[.]" (quotation omitted) (citation omitted)). Accordingly, the Court must liberally construe Plaintiff's submissions and interpret them "to raise the strongest arguments that they suggest." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006).

## ANALYSIS

The Court liberally construes Plaintiff's affidavits submitted in opposition to Defendants' motion for summary judgment as making three arguments: (1) that the FBI's search was inadequate; (2) that the Court should conduct an *in camera* review of the documents to determine whether the FBI's search was adequate; and (3) the Court should order the FBI to stop surveilling him and his family.[5] The Court addresses each argument in turn.

---

[5] Plaintiff does not appear to argue that the FBI improperly redacted information or withheld documents related to third parties as Plaintiff does not respond to Defendants' arguments related to either.

9

## I. The FBI's Searches in Response to Plaintiff's FOIA Requests Were Adequate

The adequacy of an agency's search is "measured by the reasonableness of the effort in light of the specific request." *Whitaker v. Dep't of Commerce*, 970 F.3d 200, 206 (2d Cir. 2020). To respond "adequately," an agency must show that "it made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." *Id.* at 206–07. "[A]n agency's search need not be perfect, but rather need only be reasonable." *Grand Central P'ship v. Cuomo*, 166 F.3d 473, 489 (2d Cir. 1999). The adequacy of the search may be determined by a declaration submitted by an agency. *Seife*, 298 F. Supp. 3d at 607. Agency declarations "are accorded a presumption of good faith." *Id.* at 607. Furthermore, "when such declarations are not controverted by either contrary evidence in the record nor by evidence of agency bad faith, summary judgment for [defendants] is warranted." *Center for Constitutional Rights v. C.I.A.*, 765 F.3d 161, 166 (2d Cir. 2014) (quotation omitted).

In this case, the Seidel Declaration demonstrates that the FBI used methods "reasonably calculated" to produce documents responsive to Plaintiff's FOIA request because the FBI "searched the record systems, or caused the records systems to be searched, where it believed responsive records were likely to be located." *Muzumala v. Fed. Bureau of Investigation*, No. 22-CV-3789 (JGK), 2023 WL 8850051, at *7 (S.D.N.Y. Dec. 20, 2023) (quotation omitted). For its initial search, the FBI searched its CRS — an extensive system of records maintained by the FBI and spans the entire FBI organization. Seidel Decl. ¶ 27. The FBI determined a search of the CRS

10

represented the most reasonable means for the FBI to locate records related to the Plaintiff's FOIA request on himself. *Id.* ¶ 33. It also determined that a search of the CRS automated indices, available within the FBI case management system, Sentinel — which FBI personnel rely on to "locate records and documents to fulfill essential functions" — "represents the most reasonable means for the FBI to locate records potentially responsive to the portion of Plaintiff's FOIPA request seeking records on himself." *Id.* ¶¶ 31–33. The FBI employed a search using the terms "Dawkins, Everton" and "Everton Dawkins," and provided a search cut-off date of March 7, 2023, the date of the FBI's search for records. *Id.* ¶ 34. Additionally, following the September 13, 2023 premotion conference, the FBI conducted a search for Plaintiff's address, including "140-19 Linden Boulevard," "14019 Linden Boulevard," "140-19 Linden BLVD," and "14019 Linden BLVD." *Id.* ¶ 36.

Based on the facts contained in the Seidel Declaration, the Court finds that the searches were adequate and reasonable, and that Defendants have sustained their burden to show that they complied with the FOIA. Plaintiff must therefore show evidence of bad faith in order to prevent summary judgment in Defendants' favor.

Plaintiff appears to argue that Defendants' search was not reasonable because it did not produce more information. *See, e.g.*, Pl. Opp. ¶¶ 5–20 (arguing that *in camera* review would reveal a pattern and history of surveillance). However, a plaintiff's speculative belief that records must exist, without more, will not establish that the agency did not conduct reasonable searches or impugn an agency's declaration. *See Junk v. Bd. of Governors of Fed. Rsrv. Sys.*, 19-3125-cv (L), 2022 WL

11

363776, at *2 (2d Cir. Feb. 8, 2022) (summary order) (finding that plaintiff's speculative claims that more documents exist insufficient to impugn an agency's declaration); *Smolen v. Fed. Aviation Admin.*, No. 22-CV-44 (LJL), 2023 WL 3818105, at *12 (S.D.N.Y. June 2, 2023) ("The presumption of good faith that attaches to the defendant's declarations cannot be rebutted by purely speculative claims about the existence and discoverability of other documents." (quotation omitted)). Moreover, for a search to be unreasonable, it must have been "patently incomplete," *Conti v. U.S. Dep't of Homeland Security*, No. 12-CV-5827 (AT), 2014 WL 1274517, at *13 (S.D.N.Y. Mar. 24, 2014). Here, Plaintiff has not provided any evidence to support a contention that the FBI's search was "patently incomplete" or that it was otherwise incomplete.

Accordingly, Defendants have demonstrated that they conducted reasonable and adequate searches in response to Plaintiff's FOIA requests, and Plaintiff has failed to present any evidence to rebut the presumption of good faith afforded to the agency's declaration.

## II. Plaintiff is Not Entitled to *In Camera* Review

Plaintiff argues that *in camera* review would reveal a pattern and history of surveillance and that this Court should order such a review. Pl. Opp. ¶¶ 5–20.

A district court "may examine the contents of . . . agency records *in camera* to determine whether such records or any part thereof shall be withheld under any of the exemptions." 5 U.S.C. § 552(a)(4)(B). "[T]he Second Circuit has 'adopted a restrained approach' to permitting *in camera* review, only allowing it where [for example] 'the record showed the reasons for withholding were vague,' where 'the

claims to withhold were too sweeping or suggestive of bad faith,' where 'it might be possible that the agency had exempted whole documents simply because there was some exempt material in them,' or where 'information contained in agency [declarations] is contradicted by other evidence in [the record].'" *LatinoJustice PRLDEF*, 2021 WL 1721801, at *4 (citation omitted) (alteration in original) (quoting *Halpern*, 181 F.3d at 292 and *Adelante Alabama Worker Ctr. v. United States Dep't of Homeland Sec.*, 376 F. Supp. 3d 345, 360 (S.D.N.Y. 2019)). *See also Associated Press v. U.S. Dep't of Just.*, 549 F.3d 62, 67 (2d Cir. 2008) ("In camera review is appropriate where the government seeks to exempt entire documents but provides only vague or sweeping claims as to why those documents should be withheld."). As a result, "*[i]n camera* review is considered the exception, not the rule[.]" *ACLU v. FBI*, 59 F. Supp. 3d 584, 589 (S.D.N.Y. 2014) (quoting *Local 3, Int'l Bhd. of Elec. Workers v. NLRB*, 845 F.2d 1177, 1180 (2d Cir.1988)). "Ultimately, the decision [to conduct *in camera* review] is entrusted to the district court's discretion." *Associated Press*, 549 F.3d at 67.

*In camera* review is not necessary here because Seidel's declaration was "sufficient to show why the FBI withheld certain documents pursuant to FOIA exemptions" and Plaintiff has "not offer[ed] any evidence to dispute the FBI's explanation[]." *Mermelstein v. U.S. Dep't of Just.*, No. 22-816-CV, 2023 WL 2977791, at *2 (2d Cir. Apr. 18, 2023) (summary order). Here, Seidel detailed the FBI's searches it performed at multiple junctures, the databases it used, the reasons it redacted certain information, and the privacy concerns related to documents to third

13

parties. Plaintiff has not responded to the bulk of Defendants' arguments related to the searches the agency performed or the information it redacted. As such, *in camera* review is not warranted here. *See Jabar*, 62 F.4th at 53 ("Because the Seidel Declaration was sufficiently detailed, and because [plaintiff] has failed to present any argument or justification for questioning that declaration, the district court acted well within its discretion in declining to conduct *in camera* review of those documents withheld in full.").

### III.  Other Requested Relief

Plaintiff contends that the FBI and "their local partners" have been surveilling him and his family for "24 hours per day for more than fifteen (15) years" and have taken actions to "engage [his] managers and other employees in efforts to harass and abuse [him] in an attempt to force [him] to resign." Pl. Opp. ¶¶ 6–7, 9. These allegations were not included in the complaint initiating the instant case and were raised for the first time in Plaintiff's affidavits opposing Defendants' motion for summary judgment. Plaintiff requests that the Court order "an immediate end to the electronic surveillance." Pl. Opp. at 7; *see also* Pl.'s Sur-Reply at 3.

However, Plaintiff may not raise these claims for the first time in opposition to a motion for summary judgment in his FOIA action. "A plaintiff, even when proceeding pro se, may not raise new allegations for the first time in opposition to summary judgment." *Pierre v. City of New York*, 531 F. Supp. 3d 620, 628 n.5 (E.D.N.Y. 2021) (LDH) (citing *Avillan v. Donahoe*, 483 F. App'x 637, 639 (2d Cir. 2012)) (summary order). Among other reasons, "[a] claim must be set forth in the pleadings in order to give defendants fair notice of the nature of the plaintiff's claim."

14

*Platsky v. Nat'l Sec. Agency*, No. 15-CV-1529 (ALC), 2016 WL 3661534, at *9 (S.D.N.Y. July 1, 2016), *aff'd*, 2017 WL 4052235 (2d Cir. July 17, 2017) (quoting *Thomas v. Egan*, 1 Fed.Appx. 52, 54 (2d Cir. 2001)). Indeed, while "[i]t is well established that the submissions of a pro se litigant must be construed liberally and interpreted to raise the strongest arguments that they suggest, . . . the application of this different standard does not relieve plaintiff of his duty to meet the requirements necessary to defeat a motion for summary judgment." *Rosenshine v. A. Meshi Cosms. Indus. Ltd.*, No. 18-CV-3572 (LDH), 2023 WL 6516994, at *2 (E.D.N.Y. Oct. 4, 2023) (quotation omitted).

Accordingly, the Court declines to address Plaintiff's new claim.

## CONCLUSION

For the foregoing reasons, the Court GRANTS Defendants' motion for summary judgment. The Clerk of Court is respectfully directed to enter judgment accordingly and to close this case.

SO ORDERED.

*/s/ Nina R. Morrison*
NINA R. MORRISON
United States District Judge

Dated: February 24, 2025
Brooklyn, New York

15